457 P.2d 701

ROBERT E. McKEE, GENERAL CON-
TRACTOR, INC., Plaintiff-Appellant,

v.

BUREAU OF REVENUE of the State of
New Mexico, Defendant-Appellee.

No. 8776.

Supreme Court of New Mexico.

Aug. 4, 1969.

Keleher & McLeod, T. B. Keleher, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Gary O. O'Dowd, Deputy Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Judge, Court of Appeals.

The appeal is concerned with the authority of the City of Santa Fe to impose its sales tax on receipts from three building contracts. The contracts were for construction of Santa Fe High School, the State Capitol Complex and a United States Post Office. McKee (Robert E. McKee General Contractor, Inc.) paid the tax under protest. The trial court dismissed the suit to recover the tax; McKee appeals. Issues are raised concerning (1) validity of the enabling legislation, (2) validity of the municipal ordinance and (3) jurisdiction of Santa Fe to levy its tax on receipts from the three contracts.

### Enabling legislation.

Laws 1963, ch. 166 (repealed by Laws 1965, ch. 300, § 595—for current law see §§ 14–39–1 to 14–39–5.1, N.M.S.A.1953, Repl. Vol. 3) authorized municipalities to impose a sales tax. McKee asserts this enabling legislation violates two provisions of the New Mexico Constitution—Art. IV, § 16 concerning titles to legislative enactments and Art. IV, § 18 concerning amendments to legislation.

The suit to recover the protested tax was brought under § 72–16–28, N.M.S.A.

1953 (Repl. Vol. 10, pt. 2). This section provides in part:

"* * * No grounds of illegality of the tax shall be considered by the court other than those set forth in the protest filed at the time payment is made; * * *."

The constitutional claims will not be considered because they were not set forth in McKee's protest.

### Validity of the ordinance.

McKee claims that in adopting the sales tax ordinance, the governing body of Santa Fe violated two provisions of the enabling legislation and that the result of these violations is an invalid ordinance. These two asserted violations are (1) a failure to submit the proposed ordinance to the Commissioner of Revenue not less than thirty days prior to its adoption and (2) an effective date for the ordinance earlier than sixty days after its adoption. See Laws 1963, ch. 166, § 1.

The trial court's judgment dismissed McKee's suit on the merits. No findings of fact were made; none were requested. Accordingly, we will not review the evidence to determine whether the evidence supports the judgment of dismissal. Therefore, we will not determine whether the evidence shows Santa Fe failed to comply with the provisions of the enabling legislation. Ellis v. Parmer, 76 N.M. 626, 417 P.2d 436 (1966); Western Timber Products Co. v. W. S. Ranch Co., 69 N.M. 108, 364 P.2d 361 (1961).

### Jurisdiction to tax.

The jurisdictional issue is whether Santa Fe was authorized to impose its tax upon receipts from the particular building contracts involved. The enabling legislation authorized a sales tax "* * * within the corporate limits of said municipality; * * *." Laws 1963, ch. 166, § 1. The ordinance imposes the tax "* * * within the city limits of the City of Santa Fe." Ordinance 1963–12, § 3. McKee claims

construction under each of the contracts was outside the corporate limits of Santa Fe and therefore Santa Fe was not authorized to tax the receipts from those contracts. We consider each contract.

### (a) The High School.

The claim that receipts from the high school contract were improperly taxed is based on one fact—that "* * * at the time of commencement of the construction of the Santa Fe High School * * *" the land on which the school was built was outside the municipal limits of Santa Fe. This one fact is insufficient for a determination that McKee was entitled to recover the tax imposed on receipts from the high school contract.

Was the high school location brought within the city limits before there were any receipts under the contract? We do not know. If there were receipts under the contract before the location was taken into the city, what was the amount of those receipts? Again, we do not know.

■ We assume the municipal sales tax could not be applied to receipts under the contract prior to inclusion of the location within the city. We further assume that receipts under the contract could be apportioned between those subject to and excluded from the city tax. However, there is no factual basis for an apportionment. In this situation McKee is not entitled to a recovery of any of the tax paid on the basis of the high school contract. See General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964).

Even if none of the receipts under the high school contract were subject to Santa Fe's sales tax, there is no basis for McKee to recover the tax paid on this contract. The record shows a lump sum tax paid on the three contracts; it does not show how much tax was paid on the high school contract. Since the tax on receipts under the other two contracts was properly imposed, there is no factual basis for apportionment of the tax between the high school contract and the other two. General Motors Corp. v. Washington, supra.

### (b) The State Capitol Complex.

The State Capitol Complex was built on land owned by the State located within the corporate limits of the City of Santa Fe. McKee contends the municipal sales tax may not be applied to receipts from the contract for building construction on State land unless the State has specifically consented to such taxation.

■ This view is based on a theory of the immunity of one government from taxation by another government. This "government immunity" concept applies to taxing relations of the federal and state governments; it applies because of our constitutional system of dual sovereign governments. Marson v. City of Philadelphia, 342 Pa. 369, 21 A.2d 228 (1941).

■ The relationship between the State and municipality is not one between sovereigns. The City of Santa Fe's authority is derived from the State; it has the powers conferred by the State. Bowdich v. City of Albuquerque, 76 N.M. 511, 416 P.2d 523 (1966). See City of Las Cruces v. Rio Grande Gas Co., 78 N.M. 350, 431 P.2d 492 (1967). Accordingly, the government immunity concept does not apply to taxing relations between State and municipal government. Municipal governments may tax only insofar as the State permits. Marson v. City of Philadelphia, supra.

The issue then is not whether activities upon State property are immune from municipal taxation; rather, it is whether the State has authorized the municipality to tax those activities.

In authorizing the municipal sales tax, Laws 1963, ch. 166, § 1 provides for a tax on "* * * the gross receipts of all retail business and services within the corporate limits * * *." This section also provides that the city ordinance "* * * shall contain the same definitions. * * * which are presently or hereafter provided

for by the Emergency School Tax Act, * * *." At the time the enabling legislation was enacted, the Emergency School Tax Act defined "gross receipts" to include the "total receipts" derived from the business of contracting for the construction of buildings. See §§ 72–16–2(D) and 72–16–4.7, N.M.S.A.1953 (Repl. Vol. 10, pt. 2)—repealed Laws 1966, ch. 47, § 22.

■ Under these provisions, Santa Fe was authorized to tax the total receipts of the contracting business within its corporate limits. The enabling legislation neither exempted nor excluded receipts from activities on State land from the "total receipts" authorized to be taxed. This general authorization to tax "total receipts" authorized Santa Fe to impose its sales tax on the receipts under the contract for the State Capitol Complex.

Such general authorization, however, does not go so far as to permit undue interference with governmental activities of the State. In Day v. City of Salem, 65 Or. 114, 131 P. 1028 (1913), general laws allowing the extension of municipal limits were held to authorize annexation of State land by the City. The opinion states:

"* * * The city government within its jurisdiction is a delegation of governmental authority conferred upon the city by the state, and like state laws the city laws may be enforced upon state territory as elsewhere, so long as they do not encroach upon its sovereign rights or powers. * * *"

See McConnell v. City of Columbus, 172 Ohio St. 95, 173 N.E.2d 760 (1961); Marson v. City of Philadelphia, supra.

■ Here there is no encroachment on the State's sovereign rights and powers. Santa Fe's tax is not a tax on State property; it is a tax on the privilege of doing business within the corporate limits of Santa Fe. See Bell Telephone Laboratories, Inc. v. Bureau of Revenue, 78 N.M. 78, 428 P.2d 617 (1966), app. dismissed 388 U. S. 457, 87 S.Ct. 2111, 18 L.Ed.2d 1318

(1967); Dikewood Corp. v. Bureau of Revenue, 74 N.M. 75, 390 P.2d 661 (1964). Such a privilege tax is not an undue interference with the State's governmental rights and powers. See Bradbury & Stamm Const. Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808 (1962) and cases therein discussed.

(c) The United States Post Office.

This post office was built upon land owned by the federal government located within the corporate limits of Santa Fe. Compare Smith v. State, 79 N.M. 450, 444 P.2d 961 (1968).

■ McKee asserts the municipality does not have authority to tax the receipts from the contract for constructing a building on federal land. In discussing applicability of the tax to receipts from the contract for the State Capitol Complex, we pointed out that the State has authorized the municipality to tax "total receipts" within the corporate limits. Since, however, the tax would be applicable to activities of another sovereign, the question is whether the United States permits such a tax.

The question is answered by a portion of the "Buck Act," 4 U.S.C. § 105(a). This section states:

"No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such sale is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

Burns v. State, Bureau of Revenue, Income Tax Div., 79 N.M. 53, 439 P.2d 702 (1968), cert. denied 393 U.S. 841, 21 L.Ed. 2d 111, 89 S.Ct. 119 (1968); McKee, Gen-

eral Contractor, Inc. v. Bureau of Revenue, 63 N.M. 185, 315 P.2d 832 (1957).

Santa Fe is a duly constituted taxing authority, the above quoted statute is permission from the United States to levy and collect the municipal sales tax on receipts from the post office contract "* * * as though such area was not a Federal area."

The trial court's judgment denying recovery of the tax is affirmed.

It is so ordered.

NOBLE, C. J., and TACKETT, J., concur.