(No. 37455.—

JACK METNICK, d/b/a Mars Oldsmobile, Appellant, *vs.*
THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed May 27, 1963.*

MICHAEL M. PHILLIPS, of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES and EDWARD A. BERMAN, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The facts disclose that following a hearing before the Department of Revenue the plaintiff received a final assessment for the period from August 1, 1955, through June 20, 1957, of $12,983.72, allegedly due under the Chicago municipal retailers' occupation tax. Plaintiff thereafter filed an

administrative review action in the circuit court of Cook County, which affirmed this action. An appeal directly to this court was taken pursuant to the Municipal Retailers' Occupation Tax Act, (Ill. Rev. Stat., 1961, chap. 24, par. 8—11—1), which incorporates by reference the provisions of section 12 of the Retailers' Occupation Tax Act. Ill. Rev. Stat., 1961, chap. 120, par. 451.

The plaintiff during the period involved conducted a new and used car agency at 5027 and 5817 West Madison Street near the west edge of Chicago. The majority of plaintiff's sales during this period were made in Chicago for which the above tax was fully paid. Other sales were made to residents of nearby Oak Park and other suburbs. Plaintiff's service manager testified that new cars were received by the agency at the 5817 West Madison Street location and were generally delivered to the customer at that address. Also he stated, that those sales made to nonresidents of Chicago were consummated by his taking the customer for a two-block ride across Austin Avenue, the western boundary of Chicago, into Oak Park. There physical delivery to the customer was made and the keys to the car handed him. The service manager then walked back to the agency. The title to the car was mailed directly to the customer from the Secretary of State's office.

The Municipal Retailers' Occupation Tax Act provides that "a municipality may impose a tax upon all persons engaged in the business of selling tangible personal property at retail in the municipality at the rate of not to exceed one-half of one percent of the gross receipts from such sales made in the course of such business". (Ill. Rev. Stat., 1961, chap. 24, par. 8—11—1). Pursuant to this statute the city of Chicago enacted an ordinance providing for a tax "upon all persons engaged in the business of selling tangible personal property at retail in the City of Chicago * * * at the rate of one-half of one percent of the gross receipts from such sales made in the course of such business * * * ."

Under the statute the tax is collected by the Department of Revenue and except for a deduction to cover the expense of collection, is thereafter remitted to the municipality.

The plaintiff admittedly is engaged in the business of selling tangible personal property in the city of Chicago and claims that he has paid the tax imposed by the above ordinance, the validity of which is not here questioned. It is not disputed that the tax imposed by the above statute and ordinance is upon the act of engaging in the business of selling tangible personal property at retail "in the municipality" and is not a sales tax upon the individual transactions themselves. The measure of this tax is one half of one percent "of gross receipts from *such sales* made in the course of such business * * *". (Emphasis added.) The plaintiff contends that the language "such sales" should be construed as referring back to the previous and allegedly limiting phrase "in the municipality" and, therefore, that a deduction from the amount of his total gross receipts for the amount of any sales made by him outside the city of Chicago should be allowed. Plaintiff further contends that those aforementioned sales that were made to nonresidents of Chicago where the transfer of possession and the delivery of the keys occurred just outside the city limits did not involve sales "in the municipality" and are, therefore, eligible for this alleged deduction.

The Department of Revenue, on the other hand, argues that the taxable incident is the act of engaging in the business of selling at retail, rather than the individual sales transactions themselves and that the receipts from the sales here in question were received as an incident of the plaintiff's business that was being conducted in Chicago. Therefore, according to the Department these sales should be considered in computing the tax due under the Chicago ordinance regardless of where these sales were actually consummated.

In support of his position plaintiff relies upon the case

of *City of Phoenix* v. *Borden Co.* 84 Ariz. 250, 326 P.2d 841. That case involved an ordinance providing for a tax upon the gross sales or income from businesses engaging in the sale of tangible personal property in the city. The taxpayer in that case, a retail dairy whose principal place of business was inside the city, made deliveries of milk and other products from the city to certain nonresidents. Through its deliverymen the taxpayer also submitted bills and collected for these products out of the city. The Supreme Court of Arizona held that these sales were made outside the city itself and therefore that the city ordinance taxing the privilege of conducting business inside the city was not applicable.

In the present case the cars that were sold by the plaintiff to nonresidents were ordered at the plaintiff's Chicago agency, were serviced and displayed there. Plaintiff's witness testified that only physical delivery of these cars occurred outside the city and even this was accomplished by the service manager and not by the plaintiff or a salesman. All other necessary incidents to the sales transactions, the offer, the acceptance, the payment of money and the execution of the necessary documents, occurred inside the city of Chicago. No valid business reason for the delivery of these cars outside the city of Chicago was given by the plaintiff. The contracts of sale were not shown to be dependent upon this type of delivery. The cars were not taken to the customer's home in the neighboring suburbs, but were delivered just across the western boundary line of the city. The obvious purpose of this delivery technique was to avoid the municipal occupation tax. These sales were clearly an incident of the plaintiff's business that was being conducted in the city of Chicago.

The judgment of the circuit court of Cook County is, therefore, affirmed.

*Judgment affirmed.*