EDWARD DON & COMPANY *et al.*, Plaintiffs-Appellants, *v.*
JAMES B. ZAGEL, Director of the Department of Revenue, *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-1704

Opinion filed April 13, 1981.

Maurice P. Raizes and Bruce J. Waldman, both of Cohon, Raizes & Regal, of Chicago, for appellants.

James C. Munson, Howard J. Swibel, and G. Christian Kronberg, all of Chicago (Kirkland & Ellis, and Hopkins & Sutter, of counsel), for appellee Regional Transportation Authority.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Edward Don & Company, Restaurant Enterprises, Inc., and Sizzler Family Steak Houses of West Suburban Chicago, Inc. (plaintiffs), brought this class action seeking a declaratory judgment concerning the application of the Regional Transportation Authority Retailers' Occupation Tax

(Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.03(e)). On motion of defendants, the trial court dismissed the complaint as insufficient in law. Plaintiffs appeal.

The 1979 amendments to the Regional Transportation Authority Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 701.01 *et seq.*) authorized the defendant Regional Transportation Authority (RTA) to impose retailers' occupation, service occupation and use taxes in the Chicago metropolitan area. Section 704.03(e) of the RTA Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.03(e)) provides in part:

> "The Board may impose a Regional Transportation Authority Retailers' Occupation Tax upon all persons engaged in the business of selling tangible personal property at retail in the metropolitan region at a rate not to exceed 1% of the gross receipts from such sales made in the course of such business within the County of Cook and 1/4% of the gross receipts from such sales made in the course of such business within the Counties of DuPage, Kane, Lake, McHenry and Will."

Pursuant to this authority, on September 24, 1979, the RTA adopted ordinances establishing retailers' occupation, service occupation and use taxes in the six-county metropolitan region.

Defendant Jerome Cosentino is the Treasurer of the State of Illinois. Defendant James B. Zagel is the Director of the Department of Revenue of the State of Illinois, which is the administrative agency responsible for collecting and distributing the RTA taxes. Zagel instructed plaintiffs that applicability of the RTA Retailers' Occupation Tax depends on the location of the retailer's business rather than the place where title to goods sold is transferred. Rules codifying that instruction were issued by the Department of Revenue, effective July 1, 1980. See Illinois Department of Revenue RTA Retailers' Occupation Tax Rule No. 4.3, [1980] 1 State Tax Rep.—Illinois (CCH) par. 64—074.

Plaintiff Edward Don & Company is a business located in Cook County. It sells tangible personal property at retail to customers in Cook County, in the five metropolitan counties other than Cook (known as the "collar counties") and in counties other than Cook or the collar counties (known as the "downstate counties"). Plaintiff Restaurant Enterprises, Inc., is a business located outside of Cook County and the collar counties which buys tangible personal property from Edward Don & Company. Plaintiff Sizzler Family Steak Houses of West Suburban Chicago, Inc., is a business located in the collar counties which purchases tangible personal property from Edward Don & Company.

On January 17, 1980, plaintiffs filed suit seeking a declaratory judgment that the applicability of the RTA Retailers' Occupation Tax to a sales transaction depends on the place where title to the goods sold is

transferred. The complaint also sought various refunds from defendants of taxes heretofore paid.

It is plaintiffs' initial argument that the applicability of the RTA Retailers' Occupation Tax (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.03(e)) should depend on where title to goods sold is transferred, and not on the location of the business of the retailer. Such an interpretation, plaintiffs urge, is in accordance with the plain meaning of the statute.

We disagree. The RTA Retailers' Occupation Tax (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.03(e)) authorizes the tax to be applied "at a rate not to exceed 1% of the gross receipts from *such sales made in the course of such business within the County of Cook* and 1/4% of the gross receipts from *such sales made in the course of such business within the Counties of DuPage, Kane, Lake, McHenry* and *Will*." (Emphasis added.)

■■ As noted by defendants, the interpretation of this language proposed by plaintiffs would violate the "last antecedent" rule of statutory construction. "Under this doctrine, relative or qualifying words or phrases modify words or phrases which are immediately preceding and do not modify those which are more remote." (*City of Mount Carmel v. Partee* (1979), 74 Ill. 2d 371, 375, 385 N.E.2d 687.) Pursuant to this precept, the phrases "within the County of Cook" and "within the [collar counties]" must be said to modify the immediately preceding antecedent phrase "in the course of such business." We believe this interpretation of the statute is natural, obvious, and well in accordance with the plain meaning of the language. To accept the interpretation proffered by plaintiffs would be to alter the plain meaning of the statute, which should not be done by a court of review. *People ex rel. Pauling v. Misevic* (1964), 32 Ill. 2d 11, 15, 203 N.E.2d 393, *cert. denied* (1965), 380 U.S. 963, 14 L. Ed. 2d 154, 85 S. Ct. 1107; *In re Estate of Howard* (1978), 67 Ill. App. 3d 595, 597, 385 N.E.2d 120.

■■ We also note the interpretation suggested by plaintiffs of the statute would have us, in effect, excise the phrases "made in the course of such business" in order to allow the phrases "within the County of Cook" and "within the [collar counties]" to modify "such sales." (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.03(e).) Such an action would also be in violation of long-standing rules of statutory interpretation. "A statute should be so construed, if possible, that no word, clause or sentence is rendered meaningless or superfluous." *People v. Lutz* (1978), 73 Ill. 2d 204, 212, 383 N.E.2d 171.

In addition, in construing taxation statutes, "the policy of [the Illinois Supreme Court] has been to give them a common sense meaning so as to avoid making collection difficult or impossible." (*Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 575, 369 N.E.2d 1279.) A collection system based upon the location of a retailers' business

clearly presents fewer inherent difficulties than would occur if the tax depended on location of the place where transfer of title occurred. As noted by defendants, in many circumstances the Uniform Commercial Code permits the location of the transfer of title to goods to be subject to "any conditions explicitly agreed on by the parties." (Ill. Rev. Stat. 1979, ch. 26, par. 2—401(1).) We do not believe it was the intent of the legislature that the collection authorities be required to investigate each and every commercial transaction to determine correctly where title was actually transferred.

The authority cited by plaintiffs does not support their contention. The court in *Standard Oil Co. v. Department of Finance* (1943), 383 Ill. 136, 48 N.E.2d 514, was charged with construing a State Retailers' Occupation Tax Act in its original (Ill. Rev. Stat. 1939, ch. 120, par. 440 *et seq.*) and amended versions (Ill. Rev. Stat. 1941, ch. 120, par. 440 *et seq.*). The earlier statute imposed a tax on receipts "from such sales in this State of tangible personal property * * *." (Ill. Rev. Stat. 1939, ch. 120, par. 441.) The court held the phrase "in this State" modifies its antecedent, "sales." (383 Ill. 136, 141-42.) The court thus actually applied the "last antecedent" doctrine to the statute then before it. In our opinion, application of the same principle to the present statute, as above cited, leads to the result reached by the trial court.

We also note that our interpretation of the RTA Retailers' Occupation Tax Act is in accord with the rules promulgated by the Illinois Department of Revenue. (Illinois Department of Revenue RTA Retailers' Occupation Tax Rule No. 4.3, [1980] 1 State Tax Rep.—Illinois (CCH) par. 64—074.) While such rules are not per se binding on this court (*DuMont Ventilating Co. v. Department of Revenue* (1978), 73 Ill. 2d 243, 247, 383 N.E.2d 197), they are entitled to some deference from courts of review as an "informed source for guidance" *Johnson v. Marshall Field & Co.* (1974), 57 Ill. 2d 272, 278, 312 N.E.2d 271.

Our interpretation of the RTA Retailers' Occupation Tax is in accord with the interpretations given to similar taxation statutes. It has been held that statutes relating to the same or related subjects may be considered in ascertaining the meaning of a statute. (*Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill. 2d 205, 220, 302 N.E.2d 334.) The Municipal Retailers' Occupation Tax (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—1) was interpreted to be an occupation tax incident to the operation of a business. (*Metnick v. Department of Revenue* (1963), 28 Ill. 2d 180, 190 N.E.2d 750.) Similarly, the State Retailers' Occupation Tax (Ill. Rev. Stat. 1979, ch. 120, par. 441) was interpreted to be a tax on occupations and not on sales. *Automatic Voting Machine Corp. v. Daley* (1951), 409 Ill. 438, 447, 100 N.E.2d 591.

■■ Plaintiffs argue the RTA Retailers' Occupation Tax may be distin-

guished from all other retailers' occupation taxes because the language of the statute differentiating between the applicable tax rates in Cook County and the collar counties differs from the language of the other retailers' occupation taxes. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.03(e).) However, as noted by defendants, similar provisions of the county use tax act (Ill. Rev. Stat. 1979, ch. 34, par. 409.1) were upheld by the supreme court. (*Gilligan v. Korzen* (1974), 56 Ill. 2d 387, 391-92, 308 N.E.2d 613, *cert. denied* (1974), 419 U.S. 841, 42 L. Ed. 2d 69, 95 S. Ct. 73.) Contrary to plaintiffs' contentions, we do not find these statutes to be dissimilar and therefore distinguishable.

Plaintiffs further argue that the simultaneously enacted RTA Service Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.03(f)) supports their contention. This act reads in part as follows:

> "The Board of the Authority may impose a tax upon all persons engaged, in the metropolitan region, in the business of making sales of service, who, as an incident to making such sales of service, transfer tangible personal property within the metropolitan region, either in the form of tangible personal property or in the form of real estate as an incident to a sale of service. *The tax rate shall not exceed 1% of the cost price of tangible personal property so transferred within the County of Cook* and 1/4% of the cost price of tangible personal property so transferred within the Counties of DuPage, Kane, Lake, McHenry and Will." (Emphasis added.)

It is plaintiffs' position that because service occupation taxes are intended to create tax parity between servicemen and retailers (*Fiorito v. Jones* (1968), 39 Ill. 2d 531, 536, 236 N.E.2d 698), the RTA Retailers' Occupation Tax should be similarly interpreted.

■■ We disagree. First, we find the language in the RTA Retailers' Occupation Tax imposing the tax "at a rate not to exceed 1% of the gross receipts from such sales made in the course of such business within the County of Cook * * *" to be readily distinguishable from the language in the Service Occupation Act as highlighted above. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.03(e).) The supreme court has held that where the legislature has used certain language in one instance and different language in another, different results were intended. (*Peoria Savings and Loan Association v. Jefferson Trust & Savings Bank* (1980), 81 Ill. 2d 461, 469-70, 410 N.E.2d 845.) Also, servicemen are often taxed differently from retailers and are occasionally exempt from retailers' taxes pursuant to statutory or administrative rules. See *J. H. Walters & Co. v. Department of Revenue* (1969), 44 Ill. 2d 95, 101-03, 254 N.E.2d 485; *Teletype Corp. v. Department of Revenue* (1980), 91 Ill. App. 3d 550, 554, 414 N.E.2d 1138.

In *Fiorito*, 39 Ill. 2d 531, 537, the court noted that the Service

Occupation Tax in question taxed "the serviceman only in relation to the extent that, in the manner of a retailer, he was a seller of property to the ultimate user." We conclude the trial judge did not err in finding the two tax statutes to be distinguishable.

■■ Plaintiff's final argument is that an interpretation of the RTA Retailers' Occupation Tax based upon the location of a retailer's business obviates the motives behind the legislature's establishment of different tax rates for retailers located in Cook County and the collar counties. Plaintiffs argue that purchasers from the downstate and collar counties would be unfairly bearing the burden of the higher tax rate when purchasing from retailers located in Cook County if the tax is passed on to purchasers. We find no merit in this contention. It appears to us the intent of the legislature in enacting these taxes was specifically stated (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 701.02(a)(ii)):

> "Comprehensive and coordinated public transportation is essential to the public health, safety and welfare. It is essential to economic well-being * * *."

Clearly, the legislature must have considered the burden placed upon *all* of the taxpayers of Illinois when establishing these taxes.

We, therefore, conclude the trial court properly dismissed the complaint of plaintiffs.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.